hDALEY, Judge.
This appeal seeks to vacate a judgment of joint custody and past due child support which appellant claims was procured through ill-practices.

FACTUAL AND PROCEDURAL HISTORY

Appellant, Debra Soldani, and appellee, Marco Schweter, were divorced on January 4, 1994. Prior to the divorce, appellant had filed for separation, custody and support. On April 10, 1990, appellant was awarded sole custody of the minor child of the former marriage. Appellee was ordered to pay child support in the amount of $735.00 per month.
*1024 On August 28, 1991, as a result of appel-lee’s failure to timely pay support, appellant obtained a judgment against Mr. Schweter in the amount of $3,710.00 for past due child support arrearages. Debra Soldani also instituted a URESA proceeding against Mr. Schweter, who was residing in Ohio, to enforce this judgment. Mr. |8Schweter responded to the URESA petition in Ohio and by agreement with the support enforcement officer there agreed to pay $400.00 per month while the remainder of the $735.00 obligation ($335.00) accrued as an arrearage.
On August 25, 1995, Mr. Schweter filed in Jefferson Parish a “Rule to Decrease Child Support and Set Visitation”. Petitioner prayed for a reduction in child support and reasonable visitation to be set by the court.
In response, appellant filed a Motion to Make Past Due Child Support Payments Ex-ecutory and Request for Attorney’s Fees. She also filed a Motion and Order to Examine Judgment Debtor.
The rule to decrease child support was set to be heard on November 14, 1995 and was continued by the motion of appellee on November 8, 1995. This rule was reset for February 1,1996. The judgment debtor rule was set for April 11, 1996. By motion of appellant, the hearing on the judgment debt- or rule was moved to April 11,1996.
In briefs, the parties state that while these rules were pending, various discovery proceedings took place. The appellee’s brief states that during this time, joint custody with visitation was discussed on numerous occasions. The appellant’s brief vehemently denies that custody was ever discussed, but that the parties were in agreement as to when and how visitation privileges could be exercised.
Both briefs explain that on the morning of the hearings the parties met with the court’s hearing examiner. During this meeting, the hearing officer recommended a reduction in child support to $435.00 per month. The hearing examiner and both counsel then calculated the amount of arrearage based on the $335.00 per month difference being paid by Mr. Schweter since the URESA order, February 1993, to the lúdate of filing the Rule to Reduce, August 1995. The amount of interest due on the arrearage was not determined.
The parties and their attorneys then went into the courtroom and read a consent judgment into the record. The parties exchanged drafts of a consent judgment, but could not agree on the proposed judgment. Counsel for Mr. Schweter presented a judgment to the court with a copy of the transcript of the consent agreement recited in open court. The judgment presented was signed by the trial judge on May 16, 1996. Ms. Debra Soldani has appealed from this judgment, claiming it was procured through ill-practices.
On appeal Ms. Soldani argues there are three provisions in the judgment which were never agreed upon by the parties, namely: joint custody, arrearage for the “interim period,” and arrearage for the third period. A review of the record indicates that the written judgment follows the consent agreement read into the record very closely.
The written judgment states:
Debra Soldani and Marco Polo Schweter shall have joint custody of the minor child John-Michael Schweter, with Debra Sol-dam being designated as the domiciliary parent and Marco Polo Schweter having reasonable visitation as agreed to by the parties.
At the hearing, Ms. Innes, Debra Soldani’s attorney stated:
As to visitation, Debra Soldani is going to be primary domiciliary parent. There is going to be joint custody, and Marco Schweter is going to have reasonable visitation as agreed upon by the parties.
Appellant argues that she and her attorney inadvertently failed to notice this reference to custody during the reading of the consent judgment.
Appellant then argues that the calculations regarding child support arrearage are “erroneous, ambiguous, and highly prejudicial to appellant.” The written judgment states:
Is-.. As to arrearages arising prior to January 1993, the parties agree to enter into a written agreement setting forth in essence that at the time the regular monthly child support obligation ceases un *1025 der Louisiana law an agreement as to the amount of child support arrearages due and owing prior to January 1993 will be reached by the parties.
... Marco Polo Schweter is hereby ordered to commence payments on all ar-rearages on the month immediately following the month that child support terminates for the minor child, said payments to be in the amount of $450.00 per month until the debt is paid in full, including all principal and legal interest.
The record reads as follows:
Ms. Innes:
And then lastly regarding the back child support arrearages, the following has been agreed to: The parties’ counsel are going to calculate together an agreement as to what exactly is the back child support ar-rearages. Marco Schweter agrees that amount will be paid by him as due and owing by him, and will be paid with legal interest, with the payment to commence the month following the month that child support terminates for the minor child, John Michael Schweter.
Mr. Dye:
... the only arrearages that are actually covered by this particular judgment will be the arrearages that Mr. Polo owes from the date of the Ohio court judgment in January, I believe, 1993. And the parties will agree on what legal interest is owed on that amount, which has been agreed to be ten thousand fifty dollars plus legal interest.
... At the time when the child turns nineteen years old, he will still be in high school, that is when the child support will officially end. And the parties will agree at that time how much is owed on all past due arrearages, and Mr. Polo will then agree to pay four hundred and fifty dollars a month until all of the arrearages are completely paid off.
I don’t want to belabor the point, I just want to make it clear that when he stated that we’re going to look at — recalculate again, recalculate the interest that is going to be due because within sixty days when we submit the judgment, we’re going to reach an agreement as to the principal amount due today for back child support. And then we have interest calculations that will continue to accrue each year until that debt is paid in fall ...
The record is also clear that the parties consented to the agreement which was read into the court record. The transcript reflects the following exchange:
|eMR. DYE:
Ms. Soldani, have you heard all the terms of this judgment?
MS. SOLDANI:
Yes, I have.
MR. DYE:
And do you agree to the terms of this judgment?
MS. SOLDANI:
Yes, I do agree to it.
MR. DYE:
Do you have any questions, either of you have any questions whatsoever about the terms of the judgment?
MS. SOLDANI:
Not at this time.
MR. SCHWETER:
No.

ANALYSIS:

Appellant argues that the judgment signed by the trial court should be vacated and set aside because it was procured through ill-practices. Appellee responds by stating that after sending appellant two documents entitled “Consent Judgment” which appellant refused to sign, she simply had the reading of the agreement into the record transcribed and submitted the transcript along with the judgment for signing. While a more professional practice would have been to alert the trial judge to the fact that there was disagreement as to the contents of the judgment and advise opposing counsel that the transcript and a proposed judgment was being presented to the court, we cannot say that appellee’s actions constitute ill-practice when the transcript consent agreement mirrors the judgment.
Louisiana Civil Code Article 3071 states:
*1026 A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balance by the danger of losing. This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although is substance may thereafter be written in a more convenient form.
|7In Sullivan v. Sullivan, 95-2122, (La.4/8/96), 671 So.2d 315, our Supreme Court examined Civil Code Article 3071 under facts distinguishable from the case at bar. In Sullivan, the parties and their attorneys dictated an agreement to a court reporter in one of the attorney’s offices. After this was transcribed, one of the parties refused to sign the judgment. The court held that this did not constitute an enforceable settlement agreement, notwithstanding the fact that the trial judge adopted the transcription of the oral settlement agreement. The court reiterated that “under Article 3071, for a transaction or compromise to be valid and enforceable, it must be recited in open court and capable of being transcribed from the record of the proceeding ...” Id. at 317. In concluding, the Sullivan Court stated “there could not be an enforceable settlement agreement under Article 3071 ... until those terms were recited in open court with the consent of the parties.”
The transcript of this proceeding clearly shows that appellant, Debra Soldani, and her attorney were present when the agreement was read into the record in open court; appellant stated that she heard all the terms of the judgment and that she agreed to the terms of the judgment and did not have any questions whatsoever as to the terms of the judgment. The judgment presented to the trial judge for signing follows the transcript almost verbatim. Appellant’s argument that the judgment should be vacated because it was procured through ill-practice is without merit.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.